**Virginia K. FAIN, Plaintiff–Appellant,**

**v.**

**Anthony O'CONNELL, Bishop of Roman Catholic Diocese of Knoxville, Defendant–Appellee.**

Supreme Court of Tennessee, at Knoxville.

Nov. 20, 1995.

## OPINION

REID, Justice.

This is an action in negligence for personal injuries against the Roman Catholic Diocese of Knoxville, an unincorporated association, brought by a member of the association. The trial court denied the defendant's motion for summary judgment, but granted a Rule 9[1] appeal on the issue of whether the plaintiff's cause of action is barred because she is a member of the diocese. The Court of Appeals reversed the trial court, ruling that a member of an unincorporated association has "no standing" to sue the association for negligence in the maintenance of a parking lot owned by the association. For the reasons hereinafter stated, the action of the Court of Appeals is reversed, and the suit is allowed to proceed.

### ISSUES

The complaint alleges that the plaintiff sustained personal injuries as the result of a fall in the parking lot owned by the diocese and located at St. Mary's Catholic Church in Johnson City; the plaintiff was injured while attending a church-related function;[2] the plaintiff's fall was caused by an unsafe and dangerous condition existing in the parking lot; and the unsafe and dangerous condition was the result of the defendant's failure to properly maintain the parking lot.

The complaint named as the defendant the Bishop of the diocese, as the legal owner of all diocesan property, which property is held in trust for the use and benefit of the members of the diocese. The plaintiff is a member of St. Dominic's Church in Kingsport. Both St. Mary's Church and St. Dominic's Church are parishes within the diocese of Knoxville.

In granting the defendant's motion for summary judgment, the Court of Appeals stated:

> The general rule in most jurisdictions is that members of unincorporated associa-

Russell W. Adkins, Wilson, Worley, Gamble & Ward, P.C., Kingsport, for Plaintiff–Appellant.

Janet L. Hogan, Hogan & Hogan, Knoxville, for Defendant–Appellee.

1. Tenn.R.App.P. 9.

2. The plaintiff was employed as the Religious Education Director and Youth Minister for St. Dominic's Catholic Church, but the accident was not related to her employment.

tions have no standing to sue the association. . . .

The issue, then, is whether the complaint states a cause of action against the defendant upon which relief can be granted.

## STANDARD FOR REVIEW

■ The issue presented is a question of law raised by the defendant's motion for summary judgment. The scope of review is *de novo* with no presumption of correctness. *Union Carbide Corporation v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.1993).

## ANALYSIS

### I

The traditional rationale for denying recovery against an unincorporated association by a member is the doctrine of imputed or transferred negligence. *Calvary Baptist Church v. Joseph*, 522 N.E.2d 371, 374 (Ind. 1988); Cf. John T. Hennis, *Imputed Contributory Negligence*, 26 Tenn.L.Rev. 531, 547–48 (1959). This Court, historically, has applied the rule that the negligence of those engaged in a joint enterprise or joint venture may be imputed to the other members, thereby barring a suit by a non-negligent member against the other members of the venture. *See Cole v. Woods*, 548 S.W.2d 640 (Tenn.1977). The principle is explained by Prosser as follows:

> The doctrine of vicarious responsibility in connection with joint enterprises rests upon an analogy to the law of partnership. In a partnership, there is a more or less permanent business arrangement, creating a mutual agency between the partners for the purpose of carrying on some general business, so that the acts of one are to be charged against another. A "joint enterprise" is something like a partnership, for a more limited period of time, and a more limited purpose. It is an undertaking to carry out a small number of acts or objectives, which is entered into by associates under such circumstances that all have an equal voice in directing the conduct of the enterprise. The law then considers that each is the agent or servant of the others, and that the act of any one within the

scope of the enterprise is to be charged vicariously against the rest.

W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts*, § 72, at p. 516–17 (5th ed. 1984).

Most Tennessee decisions defining joint enterprise have been in suits involving automobile accidents. For example, in *Schwartz v. Johnson*, 152 Tenn. 586, 280 S.W. 32 (1926), the plaintiff's son was killed in a car accident while riding in a car driven by the defendant's son. In response to the defense that the boys were engaged in a joint enterprise and therefore there could be no recovery because of the doctrine of imputed negligence, the Court stated,

> . . . In a joint enterprise, in order to impute the negligence of one of the parties to the other, each must have authority to control the means or agencies employed to execute the common purpose. . . .

> "Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interest in the objects or purposes of the undertaking and an equal right to direct and govern the movements and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control and management." *Cunningham v. City of Thief River Falls*, 86 N.W. 763, 84 Minn. 21.

.　　.　　.　　.　　.

> It is settled by our own cases that the negligence of the driver of a vehicle will not be imputed to an occupant of the vehicle himself without fault, unless the former be under the control or authority of the latter. The underlying principle of the cases holding the negligence of one of the parties to a joint adventure imputable to the other must be that each of the parties is the agent of the other, that each is entitled to direct the other in the prosecution of the common enterprise. . . .

> To justify the imputation of negligence, there must be agency on the one hand, authority on the other. One cannot ordinarily be charged with things beyond his power to avoid.

*Id.,* 280 S.W. at 33 (citations omitted). In *Cole v. Woods,* 548 S.W.2d 640 (Tenn.1977), the Court severely limited the application of imputed contributory negligence to the passenger in automobile accident cases:

> We have considered and analyzed this matter in the light of the indisputable fact that the laws of every land from time eternal have contained a system of tort law, in one form or another, that recognized the right of the innocent victims of wrongful conduct to recompense at the hands of the wrongdoer. The doctrine of imputed contributory negligence, founded in fallacy and existing without justification, is an impediment to that right and a stumbling block in the path of justice.
>
> The question of a passenger's right to recover should depend solely upon the presence or absence of his own personal contributory negligence.

*Id.* at 650.

The Court also stated:

> We confine this ruling to automobile negligence cases. It is possible that other situations may arise where the same result would follow; however, we leave those decisions for the future.

*Id.* at 651.

And subsequently, in *Cecil v. Hardin,* 575 S.W.2d 268 (Tenn.1978), the Court further limited joint enterprises in which recovery by a member would be barred. The Court said,

> The elements that need to be shown to establish a joint venture among several parties are a common purpose, some manner of agreement among them, and an equal right on the part of each to control both the venture as a whole and any relevant instrumentality.... Liability predicated on a joint venture theory of mutual responsibility is not imposed in instances in which the parties join together purely for pleasure, but is reserved, rather, for cases in which the parties associate for business, or expense sharing, or some comparable arrangement.

*Id.* at 271–72.

The Court articulated the same essential elements in *Spencer Kellogg & Sons, Inc. v. Lobban,* 204 Tenn. 79, 315 S.W.2d 514 (1958).

In that case, the plaintiff sold soybean oil to a Louisiana partnership. The defendant was the broker in the transaction and also a partner in the Louisiana partnership. The complaint alleged that recovery of the purchase price from the defendant should be allowed because the partnership should be considered a joint venture. The Court, in determining that the facts did not set forth a joint venture, stated as follows:

> A very reasonable definition of this creature of the law is set forth in 30 Am.Jur., p. 939, Sec. 2, as follows:
>
> > "A joint venture is an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge, but without creating a partnership in the legal or technical sense of the term, or a corporation, and they agree that there shall be a community of interest among them as to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as agent, as to each of the other coadventurers, with an equal right of control of the means employed to carry out the common purpose of the adventure."
>
> Many courts over the country have in the past years defined this term of a joint venture. It signifies to the judicial mind (a joint venture is a creation of the American Courts) that it is something more or less temporary—something gone into to more or less take a gamble on this proposition or that, or as they say sometimes, "take a flier".

*Id.,* 315 S.W.2d at 520.

■ Based on these definitions of a joint venture, common interest and purpose and equal right of control are essential components of a joint venture in which the negligence of one member is imputed to all of the other members.

## II

The defendant in this case, the diocese, asserts that it is immune from suit because

the plaintiff and all of the other members of the diocese are engaged in a joint enterprise to promote religious activities. The plaintiff responds that her suit is not precluded by the doctrine of imputed contributory negligence because she did not have an equal right to control the instrumentality that caused her injury.

The Court has not heretofore considered the application of this rule in an action for negligence by a member of an unincorporated association against the association. However, principles implicit in the Court's prior decisions militate against extension of the doctrine of imputed negligence among joint enterprisers as a blanket defense to suits by members against unincorporated associations.

■ Application of those principles to the facts and circumstances of this case compel the conclusion that the defendant is not a joint enterprise for the purposes of this suit. The total administrative structure of the diocese of Knoxville is not stated in the record. However, the record does show that each separate church of the diocese has a parish pastoral council. The *immediate control* of the church facilities, including the parking lot, was vested in St. Mary's parish council, a body elected by the membership of the parish, and its administrative staff. Apparently, each parish throughout the diocese, including St. Dominic's of which the plaintiff was a member, functioned in the same manner. There is no assertion that the plaintiff, as a member of St. Dominic's, had any responsibility for or any right of control over the maintenance of St. Mary's parish facilities. These facts do not establish a joint venture among the members of the diocese.

The diocese, thus organized, though an unincorporated association, is a separate legal entity apart from its individual members for the purposes of this suit. Unincorporated associations are consistently treated as legal entities which are subject to suit in the statutory law. *See, e.g.,* Tenn.Code Ann. § 50–3–103(8) (1991); Tenn.Code Ann. § 4–21–405 (1991) (Associations are not exempt from health and civil rights regulations.). For example, Tenn.Code Ann. § 20–2–202(a) (1994) provides:

Any unincorporated association or organization, whether resident or non-resident, ... doing or desiring to do business in this state by performing any of the acts for which it was formed, shall, before any such acts are performed, appoint an agent in this state upon whom all process may be served....

Sections 66–2–201 and 202 (1993) of the Code authorize unincorporated churches to acquire land with title to be vested in those persons designated by the members. And although the directors of non-profit associations are statutorily protected from suit, no legislation providing immunity to non-profit associations has been enacted:

All directors, trustees or members of the governing bodies of nonprofit cooperatives, corporations, associations and organizations described in subsection (d), whether compensated or not, shall be immune from suit arising from the conduct of the affairs of such cooperatives, corporations, associations or organizations. Such immunity from suit shall be removed when such conduct amounts to willful, wanton or gross negligence.... Nothing in chapters 51–68 of this title shall be construed to grant immunity to the nonprofit cooperative, corporation, association or organization.

Tenn.Code Ann. § 48–58–601(c) (Supp.1994).

■ Immunity from liability for negligence is disfavored in the law of this state and will not be granted without a compelling justification or statutory authority. *See, e.g., Broadwell v. Holmes,* 871 S.W.2d 471, 476 (Tenn.1994) (allowing parental immunity only to the extent that the constitutional rights of the parent are implemented).

The Court's dramatic repudiation of imputed contributory negligence in *Cole v. Woods,* 548 S.W.2d at 650, anticipated the decision in *McIntyre v. Balentine,* 833 S.W.2d 52 (Tenn. 1992), wherein this Court adopted the Tennessee doctrine of comparative fault, a system of allocating damages among the parties in a tort suit in proportion to the percentage of fault attributable to the respective parties. In that case, the Court held that as between a plaintiff and a defendant, the "outmoded and unjust common law doctrine of contribu-

tory negligence" should be abandoned. *Id.* at 56. It follows that the doctrine of imputed contributory negligence among members of an unincorporated association, which is based on the legal form of the organization rather than the actual degree of fault of the member, should not be adopted by this Court.

### CONCLUSION

The judgment of the Court of Appeals granting the defendant's motion for summary judgment is reversed, and the order of the trial court denying summary judgment is reinstated. The case is remanded to the trial court.

Costs of appeal are taxed against the defendant.

ANDERSON, C.J., and DROWOTA, BIRCH, and WHITE, JJ., concur.