# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### JUNE 15, 2010 Session

## JUDY WYATT v. RONALD BYRD

**Direct Appeal from the Chancery Court for Tipton County**
**No. 26113      William C. Cole, Chancellor**

_____

**No. W2009-02635-COA-R3-CV - Filed August 3, 2010**

_____

Property was purchased in Mr. Byrd's name alone, but Ms. Wyatt contends that partnership/joint venture profits were used to secure the purchase, such that she is entitled to an interest in the property. We find that, to the extent that partnership profits were used towards earnest money and closing costs, Ms. Wyatt is presumed to have an interest in the property. We vacate the trial court's dismissal order and we remand for an evidentiary hearing regarding whether R & J Remodeling profits were expended towards earnest money and closing costs, and to allow Mr. Byrd an opportunity to rebut the presumption of partnership property.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

J. Thomas Caldwell, Ripley, Tennessee, for the appellant, Judy Wyatt

Frank Deslauriers, Covington, Tennessee, for the appellee, Ronald Byrd

**OPINION**

**I. FACTS & PROCEDURAL HISTORY**

Judy Wyatt and Ronald Byrd began cohabitating in 1994, but never married. According to Ms. Wyatt, at the time their cohabitation began, she was unemployed, and Mr. Byrd was working as a painter. The following year, the parties opened a joint bank account. Ms. Wyatt claims that she began working "off and on," that both parties contributed money into the account, and that both parties' bills were paid from the joint account. In 1998, the parties started "R & J Remodeling."[1] According to Ms. Wyatt, both parties physically contributed to the remodeling efforts, and the money from the jobs was deposited into the joint account and shared equally. However, R & J Remodeling ceased operations prior to May 2001.

In May 2001, a mobile home and "a little less than two acres of land" (the "Property") was purchased in Mr. Byrd's name, alone, for $65,000.00. The loan documents, settlement statement, warranty deed, and other closing documents list only Mr. Byrd as the purchaser. However, it appears that $1,500.00 in earnest money was paid from the parties' joint account, and Ms. Wyatt claims that a $5,493.98 cashier's check brought to closing was paid from such account. Both the earnest money and money paid at closing, she claims, represent profits earned through R & J Remodeling. Furthermore, Ms. Wyatt maintains that continuing mortgage payments were paid from the joint account with money deposited by both parties.

Mr. Byrd moved out of the Property in 2007 and apparently filed an unlawful detainer action against Ms. Wyatt. Ms. Wyatt then filed a complaint alleging, among other things, the existence of a partnership between the parties, and seeking a dissolution of such partnership and a distribution of its assets–specifically at issue here, the Property. At the close of Ms. Wyatt's proof at trial, the trial court granted Mr. Byrd's motion for dismissal. The "Ruling of the Court," which was incorporated by reference into its dismissal order, states in part:

> What I understand the law to be is that a partnership by definition is an association of two or more persons carried on as co-owners of a business for profit.
>
> . . . .
>
> The thing I did not hear today is how this house factored into the business, if there was a business.

---

[1] "R & J" stands for Ronnie and Judy.

The testimony was that Ms. Wyatt and Mr. Byrd operated as . . . R & J Remodeling & Painting.

Then they went out and bought a house to live in. There was no testimony that that was part of the assets of a for-profit partne[r]ship. There's just no testimony.

The proof is that this was purchased in Mr. Byrd's sole name.

. . . .

But there's no proof that this was an asset of the partnership.

Ms. Wyatt appeals.

## II. ISSUE PRESENTED

Appellant presents the following issue for review:

1.      Whether Appellant and Appellee were parties to a joint venture or limited partnership,[2] which purchased, financed and owns, a dwelling claimed by the Appellee.

For the following reasons, we vacate the trial court's dismissal order and we remand for an evidentiary hearing regarding whether R & J Remodeling profits were expended towards earnest money and closing costs.

## III. STANDARD OF REVIEW

"When a motion to dismiss is made at the close of a plaintiff's proof in a non-jury case, the trial court must impartially weigh the evidence as though it were making findings of fact and conclusions of law after all the evidence has been presented." ***Bldg. Materials Corp. v. Britt***, 211 S.W.3d 706, 711 (Tenn. 2007) (citing *City of Columbia v. C.F.W. Constr. Co.*, 557 S.W.2d 734, 740 (Tenn. 1977)). The case should be dismissed if the plaintiff has

---

[2]We do not believe that Ms. Wyatt contends that a limited partnership was created, as it is defined in Tennessee Code Annotated section 61-1-901, as the creation of a limited partnership requires the execution of a certificate of limited partnership, filed with the Secretary of State. Because there is no argument nor indication that these steps were taken, we consider Ms. Wyatt's partnership argument under a general partnership theory.

shown no right to relief. *Id.* (citing *City of Columbia v. C.F.W. Constr. Co.*, 557 S.W.2d at 740; *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 552 (Tenn. Ct. App. 1991)). Our review of the trial court's involuntary dismissal of Ms. Wyatt's complaint is governed by Tennessee Rule of Appellate Procedure 13(d). *Id.* (footnote omitted) (citing *Atkins*, 823 S.W.2d at 552). On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. **Tenn. R. App. P. 13(d) (2009)**; *Bogan v. Bogan,* 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. **Watson v. Watson***,* 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.,* 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. RR Westminster Holding, Inc.,* 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). When the trial court makes no specific findings of fact, we review the record to determine where the preponderance of the evidence lies. **Ganzevoort v. Russell***,* 949 S.W.2d 293, 296 (Tenn. 1997) (citing *Kemp v. Thurmond,* 521 S.W.2d 806, 808 (Tenn.1975)). We accord great deference to a trial court's determinations on matters of witness credibility and will not re-evaluate such determinations absent clear and convincing evidence to the contrary. **Wells v. Tennessee Bd. of Regents***,* 9 S.W.3d 779, 783 (Tenn. 1999) (citations omitted). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. **Union Carbide Corp. v. Huddleston***,* 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.,* 788 S.W.2d 815, 817 (Tenn. Ct . App. 1989)).

## IV. DISCUSSION

### A. Existence of Partnership/Joint Venture

On appeal, Ms. Wyatt contends that the trial court erred in failing to find the existence of a partnership or joint venture. She states that during its existence, the parties deposited the profits of R & J Remodeling into their joint account, and that personal property[3] was paid for from such account. R & J Remodeling profits, she claims, were used to supply the earnest money and to cover the closing costs of the Property's purchase. She goes on to reason that because mortgage payments were made from the parties' joint account–although apparently from the deposit of separate funds as opposed to R & J Remodeling profits–that any equity built is a partnership asset. In deciding this case, we bear in mind that because the parties never married, the ordinary laws pertaining to partnership, rather than the laws of domestic relations, apply. ***See Story v. Lanier***, 166 S.W.3d 167, 177 (Tenn. Ct. App. 2004) (citing *Martin v. Coleman*, 19 S.W.3d 757, 761 (Tenn. 2000)).

---

[3]The division of separate property is not at issue on appeal.

We first address whether a partnership or joint venture existed at any time between the parties. Tennessee Code Annotated section 61-1-101 defines a "partnership" as "an association of two (2) or more persons to carry on as co-owners of a business or other undertaking for profit[.]"

> A partnership can only be created pursuant to a contract of partnership, though such an agreement may be either express or implied. *Bass v. Bass*, 814 S.W.2d 38, 41 (Tenn. 1991). To determine whether a partnership exists, courts must ascertain the intention of the parties. *Id.* In the absence of a written agreement, the requisite intention is that which is deducible from the parties' actions. *Wyatt v. Brown*, 39 Tenn. App. 28, 33, 281 S.W.2d 64, 67 (1955). The parties need only intend "to do the things which constitute a partnership." *Bass*, 814 S.W.2d at 41. A partnership results if the parties "place their money, assets, labor, or skill in commerce with the understanding that profits will be shared between them." *Id.* It is not necessary that the parties intend to actually form a partnership or even that they know the legal result of their actions is to create a partnership. *Id.* Accordingly, the terminology used by the parties to describe their business relationship is of little import. *Id.*

> The determination of whether a partnership exists must be made "upon consideration of all relevant facts, actions, and conduct of the parties," *id.*, and the burden of proof rests on the party seeking to establish the existence of a partnership. *Mullins v. Evans*, 43 Tenn. App. 330, 338, 308 S.W.2d 494, 498 (1957). "Generally, what will constitute a partnership is a matter of law, but whether a partnership exists under conflicting evidence is one of fact." *Wyatt*, 281 S.W.2d at 68.

***Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.***, 45 S.W.3d 588, 605 (Tenn. Ct. App. 2001). Where there exists no written partnership agreement, the party alleging the existence of the partnership bears the burden of proof by clear and convincing evidence. ***Story***, 166 S.W.3d at 175.

"A joint venture is a relationship which arises from an agreement between two or more persons to undertake some common objectives for the benefit of all in pursuit of which each is authorized to act for the other." ***Ollice v. Pugh***, No. 87-8-II, 1987 WL 4902, at *4 (Tenn. Ct. App. May 27, 1987); *see also Phelps v. Bank of Am.*, No. M2007-02135-COA-R3-CV, 2009 WL 690695, at *4 (Tenn. Ct. App. Mar. 13, 2009) (quoting 30 Am. Jur. 939, Sec. 2) ("A joint venture is [] an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge[.]"). Our Supreme

Court has stated that a joint venture is "'something like a partnership, for a more limited period of time, and a more limited purpose.'" *Messer Griesheim*, 45 S.W.3d at 605 (quoting *Fain v. O'Connell*, 909 S.W.2d 790, 792 (Tenn. 1995)). "Joint ventures are governed by the same rules of law as those governing partnerships." *Id.* (citing *Federated Stores Realty, Inc. v. Huddleston*, 852 S.W.2d 206, 212 (Tenn. 1992)).

The trial court made no finding regarding the existence of a partnership/joint venture, instead dismissing Ms. Wyatt's claim based on her perceived failure to prove that the Property was a partnership/joint venture asset.[4] Thus, we review the record to determine where the preponderance of the evidence lies. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997) (citing *Kemp v. Thurmond*, 521 S.W.2d 806, 808 (Tenn. 1975)).

No written agreement has been presented before this Court, thus we consider whether an *implied* partnership/joint venture agreement arose. According to the testimony of Ms. Wyatt presented at the trial in this matter, R & J Remodeling was launched in 1998, but ceased operations prior to the Property's purchase in May 2001. Ms. Wyatt claims that both parties physically labored on R & J Remodeling's projects, and that both parties had equal earnings in the business, which were deposited into a joint account. Based on this testimony, we find that the parties "placed[d] their money, assets, labor, or skill in commerce with the understanding that profits [would] be shared between them[,]" *see Bass*, 814 S.W.2d at 41, such that an implied partnership/joint venture arose between them during the life of R & J Remodeling.

## B.    Property as Partnership/Joint Venture Asset

Having found that an implied partnership/joint venture existed at one time between the parties, we must determine whether the Property in question is an asset of such arrangement. Tennessee Code Annotated section 61-1-203 states that "Property transferred to or otherwise acquired by a partnership is property of the partnership and not of the partners individually." "Property is presumed to be partnership property if purchased with partnership assets," even if the property is not acquired in the name of the partnership or in the name of a partner in his or her capacity as a partner. **Tenn. Code Ann. § 61-1-204**.

Again, Ms. Wyatt testified that at least some of the money expended towards the Property–earnest money and closing costs–represented profits from R & J Remodeling

---

[4]As we noted above, the trial court stated that it "did not hear today [] how [the Property] factored into the business, if there was a business."

projects. Therefore, it is presumed that the partnership acquired an interest in the Property to the extent that R & J Remodeling profits were paid towards its purchase, such that an equitable division is appropriate. We find no authority preventing the Property, or a portion thereof, from becoming a partnership asset simply because the partnership ceased operations prior to the Property's purchase. If this were so, a single partner, post-cessation, could convert partnership assets into separate property by simply using partnership funds to finance a purchase titled in his name, alone. Instead, we find it appropriate that where partnership assets are committed to a property's purchase, the newly-acquired property is presumed to be partnership property in proportion to the amount expended, even if the partnership is no longer conducting business.

Mr. Byrd's main counter-argument on appeal is that the Property was purchased as a home rather than "for profit." Thus, he contends that no partnership arose regarding its purchase. Mr. Byrd's argument is only partially correct. We agree that the mere payment of ongoing mortgage payments from a joint account caused no partnership to *arise* following the expiration of R & J Remodeling in 2001.[5] Therefore, money expended towards the Property from sources other than R & J Remodeling profits does not create a partnership interest in Ms. Wyatt. However, because R & J Remodeling existed at one time as a "for profit" business, and otherwise qualified as a partnership, to the extent that R & J Remodeling profits were used towards the Property's purchase, the partnership is presumed to have acquired an interest in the Property.

Because this case was dismissed after Ms. Wyatt's proof, Mr. Byrd had no opportunity to present evidence regarding the extent of R & J Remodeling profits used, if any, towards the Property's purchase, nor, if profits were used, to rebut the presumption that the partnership acquired an interest in the Property. Accordingly, we vacate the trial court's dismissal order and we remand for an evidentiary hearing regarding whether R & J Remodeling profits were expended towards earnest money and closing costs, and to allow Mr. Byrd the opportunity to rebut any presumption of partnership property. If the trial court finds that the Property was purchased with partnership assets, and Mr. Byrd is unable to rebut the presumption of partnership property, Ms. Wyatt shall be entitled to a one-half interest in R & J profits expended.

---

[5]Ms. Wyatt does not argue that ongoing mortgage payments were paid with R & J Remodeling profits.

## V.   CONCLUSION

For the aforementioned reasons, we vacate the trial court's dismissal order and we remand for an evidentiary hearing regarding whether R & J Remodeling profits were expended towards earnest money and closing costs, and to allow Mr. Byrd the opportunity to rebut any presumption of partnership property.  Costs of this appeal are taxed equally to Appellant, Judy Wyatt, and Appellee, Ronald Byrd, for which execution may issue if necessary.

_____

ALAN E. HIGHERS, P.J., W.S.