# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### SEPTEMBER 9, 2010 Session

## WADE PHELPS/PHELPS HARRINGTON CONSTRUCTION CO., INC. v. C & C CONSTRUCTION CO., LLC, ET AL.

### Direct Appeal from the Chancery Court for Davidson County
No. 04-3567 III      Ellen Hobbs Lyle, Chancellor

_____

### No. M2010-00228-COA-R3-CV - Filed November 9, 2010

_____

Contractor agreed to build duplex for property owner, with plaintiff providing construction financing. At closing, contractor was paid, but contractor did not pay plaintiff as agreed. Plaintiff sued property owner, contractor, and bank. We previously affirmed the trial court's grant of summary judgment to the bank, finding that contractor and plaintiff were in a joint venture, such that payment to contractor was payment to plaintiff. Property owner then moved for summary judgment, which the trial court granted. Because we find no separate agreement between property owner and plaintiff requiring repayment directly to plaintiff, plaintiff's cause of action against property owner is precluded, and the trial court's grant of summary judgment is affirmed.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Dan R. Alexander, Nashville, Tennessee, for the appellant, Wade Phelps

Richard Manson, John Richard Manson, Isaac I. Conner, Nashville, Tennessee, for the appellee, Joseph L. Angus

## OPINION

### I. FACTS & PROCEDURAL HISTORY

A portion of the pertinent facts of this case have been previously set forth in the opinion of this Court issued on March 13, 2009:

Joseph Angus owned property in Davidson County on which he wanted to construct a duplex. He approached Bank of America ("BOA") to obtain financing but was told that BOA could not finance the construction, but would extend a loan once the property was improved. Mr. Angus engaged William Church, d/b/a C & C Construction ("C & C"), to perform the construction. To assist Mr. Angus in getting the construction funded, Mr. Church contacted Wade Phelps, a former business partner, to provide the construction funding. Mr. Phelps agreed.

A contract was entered into between Mr. Angus, as owner, and Mr. Church, on behalf of C& C Construction Co., as contractor, on June 13, 2004, for the construction of the duplex at a cost of $137,000.00; the cost was adjusted upward to $141,000.00 by addendum signed by Mr. Angus and Mr. Church, on behalf of C & C. *A second addendum dated June 16, 2004, was added stating: "Wade Phelps owner of Phelps/Harrington Construction will be supplying the construction finance [sic] of $137,000.00 to complete this project at 10% interest payable by owner at closing at a fee of $1,370.00 total for use of money during construction." This addendum was signed by Mr. Phelps, Mr. Church, on behalf of C & C, and Mr. Angus.*

Mr. Church and Mr. Phelps entered into a separate agreement dated June 16, 2004, which provided in pertinent part as follows:

This agreement is between Wade Phelps owner of Phelps/Harrington Construction Co. and William Church, owner of C & C Construction Co. [t]his 16th [d]ay of June 2004. The two companies listed above has [sic] come to [an] agreement to do a joint venture to construct a new (2) story approx 2,500 sq. foot dwelling located at --- Hume St. Nashville, TN in Davidson County 37208

* * *

5) At time of closing all profit remaining will be divided in 50% by Wade Phelps of Phelps/Harrington Construction Co[.] and William Church owner of C & C Construction Co.

During construction, Mr. Phelps made payments to Mr. Church or paid bills incurred in the construction. As construction neared completion, Mr. Angus and Mr. Church agreed upon the final amounts due for the construction of the project of $151,110.00. Included within that final amount was the sum of $1,370.00, the amount to be paid Mr. Phelps for providing the construction financing.

A loan closing date was set, however, the loan closing was later rescheduled because the duplex was not complete and an as-built appraisal had not been obtained. The appraisal was subsequently performed, but the property appraised for less than initially anticipated. Based on the appraisal figure of $165,000.00, BOA limited its loan to $132,000.00. At closing, the loan proceeds were disbursed and Mr. Angus paid the additional $24,342.22 necessary to pay off the construction costs. The closing attorney issued a check in the amount of $151,110.00 to Mr. Church, on behalf of C & C, for the construction costs; Mr. Church retained the entire proceeds and did not pay Mr. Phelps. BOA received a deed of trust securing the note of Mr. and Mrs. Angus. Mr. Phelps contended that he was not advised of the closing date and, thus, did not attend the closing. Mr. Church acknowledged receipt of the construction payoff at closing and asserted that he did not pay Mr. Phelps because Mr. Phelps owed him money from prior dealings.

*Phelps v. Bank of America*, No. M2007-02135-COA-R3-CV, 2009 WL 690695, at \*1 (Tenn. Ct. App. Mar. 13, 2009) (emphasis added) (footnote omitted).

Wade Phelps/Phelps Harrington Construction Co., Inc. ("Mr. Phelps") filed suit against Bank of America, Mr. Angus, Mr. Church, and C & C Construction Co. Mr. Phelps' complaint alleged breach of contract against Mr. Angus, Mr. Church, and C & C; negligence against BOA; fraud against Mr. Church and C & C; and unjust enrichment as well as fraudulent conveyance of the Deed of Trust against all defendants. BOA filed a motion for summary judgment, claiming that Mr. Phelps and Mr. Church had entered into a joint venture for the construction of the duplex, that it had fulfilled its only obligation to loan Mr. Angus $132,000.00, and that Mr. Angus' payment to Mr. Church at closing constituted payment to the joint venture. *Id.* at \*2. The trial court granted BOA's motion for summary judgment and dismissed Mr. Phelps' claims against it, finding that Mr. Church and Mr. Phelps had entered into a joint venture for the construction of the duplex and that payment to Mr. Church

at closing was payment to the joint venture. *Id.*

On appeal, we found "[t]he record and material filed in support of [BOA's] motion for summary judgment support[ed] a finding of a joint venture between Mr. Church and Mr. Phelps[,]" and that Mr. Phelps had submitted insufficient proof to negate this contention. *Id.* at *4, 6. Specifically, we noted that Mr. Phelps and Mr. Church had executed a document acknowledging that they had come to an "agreement to do a joint venture to construct a new . . . dwelling[,]" outlining their separate responsibilities relative to the construction project, and agreeing to equally divide the profits at closing. *Id.* at *4. We agreed that "payment to Mr. Church was payment to the joint venture[,]" and found that such payment effectively negated an essential element of Mr. Phelps' breach of contract claim. *Id.* at *4, 6 (citing *Fain v. McConnell*, 909 S.W.2d 790 (Tenn. 1995); *Spencer Kellogg & Sons, Inc. v. Lobban*, 315 S.W.2d 514 (Tenn. 1958)).

Following our affirmance of summary judgment to BOA, Mr. Angus filed a motion for summary judgment, which the trial court granted. In its "Memorandum and Order," the trial court stated in part:

> [T]he Court of Appeals determined that the legal significance of the second addendum signed by the parties concerning financing was that [Mr. Phelps] and Mr. Church had divided responsibilities with respect to their joint venture. The Court of Appeals held that the second addendum signified that [Mr. Phelps'] responsibility under the joint venture was to furnish financing; whereas defendant Church's responsibility was the construction of the duplex.
>
> [Mr. Phelps'] theory of liability against defendant Angus is that the second addendum and other conversations and actions of the parties signify that defendant Angus had an obligation/agreement relative to financing with [Mr. Phelps], separate and apart from the joint venture [Mr. Phelps] had with defendant Church. That theory of liability is inconsistent with and cannot be reconciled with the holding of the Court of Appeals that the second addendum is a statement of [Mr. Phelps'] responsibilities under the joint venture. [Mr. Phelps'] theory of liability against defendant Angus, then, cannot be sustained in light of the ruling of the Court of Appeals on the summary judgment as to Bank of America. Accordingly, the breach of contract claim alleged by [Mr. Phelps] against defendant Angus is dismissed with prejudice.[1]

---

[1] The trial court also dismissed Mr. Phelps' unjust enrichment claim based upon the existence of a contract governing repayment to Mr. Phelps and upon the absence of an unjust benefit. The dismissal of this

(continued...)

Mr. Phelps timely appealed.

## II. ISSUES PRESENTED

Mr. Phelps presents the following issues for review:

1.      Whether the trial court erred in granting summary judgment to Mr. Angus; and

2.      Whether this Court's previous opinion precludes a cause of action against Mr. Angus.

Additionally, Mr. Angus presents the following issue:

3.      Whether Mr. Angus should be awarded attorney fees for frivolous appeal.

For the following reasons, we affirm the trial court's grant of summary judgment to Mr. Angus.  However, we decline to award attorney fees to Mr. Angus.

## III. STANDARD OF REVIEW

A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Tenn. R. Civ. P. 56.04.**  "The party seeking the summary judgment has the burden of demonstrating that no genuine disputes of material fact exist and that it is entitled to a judgment as a matter of law." *Green v. Green,* 293 S.W.3d 493, 513 (Tenn. 2009) (citing *Martin v. Norfolk S. Ry.,* 271 S.W.3d 76, 83 (Tenn. 2008); *Amos v. Metro. Gov't of Nashville & Davidson County,* 259 S.W.3d 705, 710 (Tenn. 2008)).  "When ascertaining whether a genuine dispute of material fact exists in a particular case, the courts must focus on (1) whether the evidence establishing the facts is admissible, (2) whether a factual dispute actually exists, and, if a factual dispute exists, (3) whether the factual dispute is material to the grounds of the summary judgment." *Id.*  Not every factual dispute requires the denial of a motion for summary judgment. *Id.* at 514.  To warrant denial of a motion for summary judgment, the factual dispute must be material, meaning "germane to the claim or defense on which the summary judgment is predicated." *Id.*  (citing *Eskin v. Bartee,* 262

[1](...continued)
claim is not challenged on appeal.

S.W.3d 727, 732 (Tenn. 2008); *Luther v. Compton,* 5 S.W.3d 635, 639 (Tenn. 1999)).

When the party moving for summary judgment is a defendant asserting an affirmative defense, he or she may shift the burden of production by alleging undisputed facts that show the existence of the affirmative defense. *Hannan v. Alltel Publ'g Co.,* 270 S.W.3d 1, 9 n.6 (Tenn. 2008). "If the moving party makes a properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist." *Martin,* 271 S.W.3d at 84 (citing *McCarley v. W. Quality Food Serv.,* 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd v. Hall,* 847 S.W.2d 208, 215 (Tenn. 1993)). The nonmoving party may satisfy its burden of production by:

> (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06.

*Id.* (citing *McCarley,* 960 S.W.2d at 588; *Byrd,* 847 S.W .2d at 215 n. 6).

The resolution of a motion for summary judgment is a matter of law, which we review de novo with no presumption of correctness. *Martin,* 271 S.W.3d at 84. However, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Id.* (citing *Staples v. CBL & Assocs., Inc.,* 15 S.W.3d 83, 89 (Tenn. 2000)). Summary judgment is appropriate "when the undisputed facts, as well as the inferences reasonably drawn from the undisputed facts, support only one conclusion--that the moving party is entitled to a judgment as a matter of law." *Green,* 293 S.W.3d at 513 (citing *Griffis v. Davidson County Metro. Gov't,* 164 S.W.3d 267, 283-84 (Tenn. 2005); *Pero's Steak & Spaghetti House v. Lee,* 90 S.W.3d 614, 620 (Tenn. 2002)).

## IV.  DISCUSSION

### A.  Cause of Action Against Mr. Angus

On appeal, Mr. Phelps does not challenge the finding of a joint venture between himself and Mr. Church. Instead, he argues that payment to Mr. Church does not entitle Mr. Angus to summary judgment as it did BOA, because unlike BOA, Mr. Angus entered into a "separate contract agreement" with Mr. Phelps in which he agreed to directly repay Mr. Phelps at closing. This separate financing agreement, Mr. Phelps maintains, is found in the

second addendum to the construction contract signed by himself, Mr. Angus and Mr. Church:

> Wade Phelps owner of Phelps/Harrington Construction will be supplying the construction finance [sic] of $137,000.00 to complete this project at 10% interest payable by owner at closing at a fee of $1,370.00 total for use of money during construction.

According to Mr. Phelps, this agreement established a duty by Mr. Angus to directly repay him the money at closing, and his failure to do so resulted in a breach of contract.

In his affidavit, submitted in opposition to summary judgment, Mr. Phelps described the execution of the second addendum as follows:

> I specifically and expressly only agreed to provide the financing for Mr. Angus's building after I spoke with Mr. Angus and after he agreed to sign the agreement that I would be paid the money back by him at the closing.
>
> . . . .
>
> I did not agree to provide the financing to enable Mr. Angus to get his loan from Bank of America until he and I spoke and he signed the attached agreement that the money I advanced, the $137,000 together with the interest, would be paid to me directly, up front and separate at the closing. . . . It was my intention and agreement to loan that money to Mr. Angus only if it was separated out from the construction and repaid with interest directly to me at closing.

We cannot agree with Mr. Phelps' assertion that the second addendum operates as a separate repayment agreement between himself and Mr. Angus. As the trial court correctly stated, in our prior opinion we characterized the second addendum as a statement of Mr. Phelps' responsibilities under the joint venture. *Phelps*, 2009 WL 690695, at *4. The addendum simply cannot support both the finding of a joint venture–where payment to one joint venturer is payment to all–and a duty by Mr. Angus to pay the entire amount to Mr. Phelps. *See* **Tenn. Code Ann § 61-1-301(1);** *Fed. Stores Realty, Inc. v. Huddleston*, 852 S.W.2d 206, 212 (Tenn. 1992). Moreover, we find that Mr. Phelps' affidavit does not create a genuine issue of material fact as to the second addendum's operation. By its plain language, the addendum states only Mr. Phelps' agreement to finance the project and Mr. Angus' agreement to repay the loan. Contrary to Mr. Phelps' assertion, it simply does not provide that repayment shall be made to Mr. Phelps "directly, up front and separate at the

closing[,]" as opposed to either joint venturer who executed the addendum.

Based on our prior opinion, we conclude that no separate agreement regarding repayment existed between Mr. Angus and Mr. Phelps, and therefore that the finding of a joint venture between Mr. Church and Mr. Phelps precludes a cause of action against Mr. Angus. This finding is further supported by our previous statement that "any claim of negligence against BOA by Mr. Phelps would fail because of the uncontroverted proof that the cause in fact and proximate cause of Mr. Phelps' failure to be paid was the action of Mr. Church in not paying him." **Phelps**, 2009 WL 690695, at *7. Because there exists no genuine issue as to any material fact and Mr. Angus is entitled to a judgment as a matter of law, we affirm the trial court's grant of summary judgment to Mr. Angus.

### B. Attorney Fees

Mr. Angus seeks to recoup his appellate attorney fees based on a frivolous appeal. Tennessee Code Annotated section 27-1-122 provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

The decision to award damages for the filing of a frivolous appeal rests solely in the discretion of this Court. **Whalum v. Marshall**, 224 S.W.3d 169, 180-81 (Tenn. Ct. App. 2006) (citing *Banks v. St. Francis Hosp.,* 697 S.W.2d 340, 343 (Tenn. 1985)). "Successful litigants should not have to bear the expense and vexation of groundless appeals." **Id.** (quoting *Davis v. Gulf Ins. Group,* 546 S.W.2d 583, 586 (Tenn. 1977)). An appeal is frivolous when it has "no reasonable chance of success," or is "so utterly devoid of merit as to justify the imposition of a penalty." **Id.** (citing *Combustion Eng'g, Inc. v. Kennedy,* 562 S.W.2d 202, 205 (Tenn. 1978); **Jackson v. Aldridge**, 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999)). We exercise our discretion under this statute sparingly so as not to discourage legitimate appeals. **Id.** In this case, we find it equitable to decline to award attorney fees.

### V. CONCLUSION

For the aforementioned reasons, we affirm the trial court's grant of summary judgment to Mr. Angus. However, we decline to award attorney fees to Mr. Angus. Costs of this appeal are taxed to Appellant, Wade Phelps/Phelps Harrington Construction Co., Inc., and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.