IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 13, 2019 Session

# BILLY PERDUE ET AL. v. GREG KNEEDLER ET AL.

**Appeal from the Chancery Court for Sumner County**
**No. 2015-CV-82     Louis W. Oliver, Chancellor**

———————————————————

## No. M2018-00722-COA-R3-CV

———————————————————

This appeal involves a breach of a lease agreement.  At trial, both defendants, operators of a natural foods business, admitted that the lease had been breached.  However, because only one of the Defendants had signed the lease, the other argued that he was not a party to and was therefore not responsible for the obligations of the lease.  The Defendant who had signed the lease claimed he did so on behalf of and at the direction of the other. Finding that both Defendants had combined their efforts, skills, knowledge, and money for the purpose of operating the business, the trial court concluded on several bases that the Defendants were jointly liable for the obligations of the lease. Only the non-signing Defendant appeals. Because we agree with the trial court that the Defendants had formed a joint venture and, thus, were jointly liable, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Jason S. Mangrum, Brentwood, Tennessee, for the appellant, Michael Arthur, and Under the Sun Natural Foods[1].

William Joseph Butler, Lafayette, Tennessee, for the appellees, Billy Perdue, and Jeremy Hammonds.

---

[1] The record in this appeal reflects that "Under the Sun Natural Foods" is a fictitious name used by Mr. Arthur to operate a natural food business as an individual proprietorship. As  a result, the trial court rendered its judgment against "Defendants Greg Kneedler and Michael Arthur individually and d/b/a Under the Sun Natural Foods, jointly and severally." Mr. Arthur has not raised this as an issue on appeal and we, therefore, consider Mr. Arthur as the Appellant on this appeal.

# OPINION

## BACKGROUND AND PROCEDURAL HISTORY

On July 14, 2014, Billy Perdue and Jeremy Hammonds (together, "Plaintiffs"), as lessors, entered into a lease agreement (the "Lease") in which they leased their property at 123B Fairfield Road in Sumner County, Tennessee (the "Property") to Greg Kneedler and Michael Arthur. The Property was to serve as a regional distribution center and store outlet for Under the Sun Natural Foods ("Under the Sun")[2]. The Lease was for a term of four years, from August 1, 2014 to July 31, 2018. Additionally, as a condition of the Lease, Plaintiffs were required to make over $30,000 in improvements to the Property. Payments were made under the Lease until February 2015, at which point payments ceased. Plaintiffs, on May 21, 2015, filed a complaint against Messrs. Kneedler and Arthur and Under the Sun (together, "Defendants") in the Sumner County Chancery Court (the "trial court"). Plaintiffs sought $69,600.00 for all past and future unpaid rent and $30,000 for the amount they spent in improving the Property to meet the needs of the Defendants, totaling $99,600. Plaintiffs also sought their attorney's fees, which were provided for in the Lease.

At trial, Defendants stipulated that the Lease had been breached and submitted that the only issue for the trial court to determine was who was responsible for the breach.[3] According to Plaintiffs, Defendants were jointly and severally liable. Defendants, however, denied any personal liability. Mr. Kneedler asserted that he had signed the Lease on behalf of Mr. Arthur and Under the Sun, while Mr. Arthur contended that neither he nor Under the Sun was a named party to or signed the Lease and that Mr. Kneedler had not signed it in any representative capacity. Additionally, Mr. Arthur raised the Statute of Frauds as a defense pursuant to Tennessee Code Annotated section 29-12-101(a).

On March 23, 2018, the trial court entered its final order, concluding that Messrs. Kneedler and Arthur were individually and jointly liable to Plaintiffs in the sum of $49,950.00 under the doctrines of joint venture, implied partnership, agency, and partial

---

[2] Mr. Arthur's primary location for his "Under the Sun Natural Foods" business was in Crossville, Tennessee.

[3] At trial, counsel for both parties described the issue as follows:

> [Plaintiffs]: [W]e've stipulated that the contract has been breached by the defendants . . . . Is that accurate?
> [Defendants]: Yes.
> The Court: All right. You're stipulating the contract has been breached. And it's up to The Court to decide who is responsible for the breach?
> [Plaintiffs]: Correct.

performance.[4]    Additionally, the trial court concluded that the doctrine of partial performance served as an exception to the Statute of Frauds to the extent that Mr. Arthur raised it as a defense to liability under the Lease.  Mr. Arthur (hereinafter, "Appellant") timely appealed.[5]

## ISSUES PRESENTED

As we perceive it, Appellant raises five issues for review, which we rephrase as follows:

1. Whether the trial court erred in finding that Appellant and Mr. Kneedler were engaged in a joint venture, permitting a finding of liability on behalf of Appellant.
2. Whether the trial court erred in finding that Appellant and Mr. Kneedler formed a partnership, permitting a finding of liability on behalf of Appellant.
3. Whether the trial court erred in finding that Mr. Kneedler signed the Lease in a representative capacity, thus permitting a finding of liability on behalf of Appellant under an agency theory.
4. Whether the trial court erred in finding that Appellant partially performed under the Lease and thus permitted a finding of liability.
5. Whether the trial court erred in finding that the Statute of Frauds was not applicable.

Plaintiffs raise one additional issue for review: Whether the case should be remanded to the trial court for a determination of Plaintiffs' attorney's fees and expenses on appeal.

## STANDARD OF REVIEW

In non-jury cases, appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013).  We review the trial court's resolution of questions of law de novo with no presumption of correctness. *See Armbrister*, 414 S.W.3d at 692.

---

[4] The sum represented the remaining rent payments as set forth in the Lease, less the security deposit, the rental payments received, and the mitigation rents received.
[5] Mr. Kneedler elected not to pursue an appeal.

DISCUSSION

We first address Appellant's argument that the trial court erred in finding that he was engaged in a joint venture with Mr. Kneedler. As the Tennessee Supreme Court has stated, a joint venture

> is an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge, but without creating a partnership in the legal or technical sense of the term, or a corporation, and they agree that there shall be a community of interest among them as to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as agent, as to each of the other coadventurers, with an equal right of control of the means employed to carry out the common purpose of the adventure.

*Fain v. O'Connell*, 909 S.W.2d 790, 793 (Tenn. 1995) (quoting *Spencer Kellogg & Sons, Inc. v. Lobban*, 315 S.W.2d 514, 520 (Tenn. 1958)). Appellant contends that "[t]here was simply no agreement between Kneedler and Arthur, and certainly no agreement that could be inferred with enough particularity to satisfy the contract/agreement requirement to find joint venture liability." However, after our review of the record, we conclude that the existence of an agreement to form a joint venture between Messrs. Kneedler and Arthur can be inferred from the parties' actions and conduct.

According to Mr. Arthur, he simply assisted and advised Mr. Kneedler in setting up his own natural foods store, describing his relationship to him as that of a "mentor." However, according to the testimony of Lisa Hammonds—the daughter of Plaintiff Perdue and the mother of Plaintiff Hammonds—Mr. Kneedler told her during the Lease negotiations that he and Mr. Arthur were partners and wanted to rent the Property in Sumner County for the purpose of operating a regional distribution center and store outlet for Under the Sun. She also testified that Mr. Kneedler had to suspend the Lease negotiations several times in order to call Mr. Arthur and receive his input on certain provisions in the Lease. As to why Mr. Arthur did not sign the Lease, Mr. Kneedler stated in his deposition testimony that he had Mr. Arthur's "verbal authorization" to sign the Lease for him.[6] Moreover, Plaintiffs' testimony at trial echoed one another, reflecting that, during the Lease negotiations, both were given the impression that Messrs. Kneedler and Arthur were in business together as Under the Sun.

---

[6] When asked to clarify his statement that he had "signed [the Lease] for Mr. Arthur[,]" Mr. Kneedler stated the following: "Since Michael Arthur couldn't come down at the time the building was done, I asked him if he wanted me to sign it and he said yes."

- 4 -

The record also reflects that Messrs. Kneedler and Arthur collaborated on numerous aspects of the Property. In his deposition testimony, Mr. Kneedler stated that, before they had entered the Lease, it was Mr. Arthur who had suggested the location of the Property in Sumner County. Mr. Kneedler also stated that it was Mr. Arthur who had explained to him how the Property "need[ed] to be laid out."[7] Additionally, Mr. Kneedler stated that he and Mr. Arthur had discussed the design and placement of an Under the Sun sign—which Mr. Arthur paid for—that was erected in front of the Property. In his own deposition testimony, Mr. Arthur admitted that he signed all of the checks for Under the Sun, including those used for rent payments, advertising, and electric bills.

It is undisputed that Mr. Arthur did not sign the Lease, but the law is clear that such formalities are not required to form a joint venture. *See Fain*, 909 S.W.2d at 793 ("A joint venture is an association of persons with intent, by way of contract, express *or implied . . . .*") (emphasis added). By their conduct and actions, Messrs. Kneedler and Arthur exhibited a tacit understanding that they would operate a store outlet as well as a regional distribution center for Under the Sun in Sumner County—an expansion from the Under the Sun stores in Crossville, Tennessee and Virginia. While Mr. Arthur may have had a more behind-the-scenes role than Mr. Kneedler, and while their business relationship may have been a short and informal one, "[a]lthough similar to a partnership, a joint venture exists for a more limited time and a more limited purpose." *Messer Griesheim Industries, Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 469 (Tenn. Ct. App. 2003) (citing *Fain*, 909 S.W.2d at 793). Moreover, while Mr. Kneedler personally signed the Lease, Mr. Arthur was heavily involved in the Lease negotiations; and, while Mr. Kneedler provided his efforts on site at the Property, including having a telephone service installed and procuring certain advertisement materials,[8] such as pens, logos, and

---

[7] Specifically, Mr. Kneedler provided the following:

Q: And so what did [Mr. Arthur] tell you about how it needed to be laid out?
A: First off, it needs to have a completely concrete floor put in the building. It needs to have heat and air put to the building because of the food products coming in, and it needed to have a station put in for cleaning products or anything, have a drain put into it.
Q: Did Mr. Arthur put those requirements in writing to you.
A: When we talked, he had – we had a drawout kind of idea.
Q: Explain what you mean by that.
A: You basically have a piece of paper and basically draw out the place, the floor plan of it and draw it out how it should be divided up and stuff.
Q: And then after Mr. Arthur provided you that piece of paper, what did you do with that piece of paper?
A: I talked to Mr. Perdue about it.

[8] In fact, Mr. Arthur admitted that he used some of these advertising materials at the Under the Sun stores in Virginia and Crossville, Tennessee.

the sign, Mr. Arthur provided his knowledge of the natural foods industry as well as his own money for lease payments, advertising, signage and electric bills. Because "[e]ach of the several joint venturers has the power to bind the others and to subject them to liability to third persons in matters which are strictly within the scope of the joint enterprise[,]" *Robertson v. Lyons*, 553 S.W.2d 754, 757 (Tenn. 1977), the trial court properly concluded that Messrs. Kneedler and Arthur were each liable for the obligations of the Lease and any damages caused by their breach thereof. Moreover, because a determination that the Appellant was engaged in a joint venture with Mr. Kneedler is sufficient to support liability on the part of Appellant in this case, all other issues raised by Appellant as to his liability under the theories of implied partnership, agency, and partial performance are pretermitted.

We next address Appellant's argument that the trial court erred in finding that the Statute of Frauds was not applicable. Specifically, Appellant contends that, "[g]iven the existence of an actual, written, executed contract," he cannot be held liable for the breach of the Lease because only Mr. Kneedler signed the Lease. However, the relevant Statute of Frauds provision provides the following:

> No action shall be brought . . . [u]pon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one (1) year . . . unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, *or some other person lawfully authorized by such party*.

Tennessee Code Annotated section 29-2-101(a)(4) (emphasis added). Because "each coadventurer shall stand in the relation of principal, as well as agent, as to each of the other coadventurers," *Fain*, 909 S.W.2d at 793, Mr. Kneedler was "lawfully authorized" to sign the Lease on behalf of himself and Appellant. Accordingly, the trial court did not err in determining that the Statute of Frauds was inapplicable.[9]

Lastly, we turn next to Plaintiffs' request for attorney's fees on appeal. The Lease contains the following provision regarding such fees:

> Lessee shall be liable to account not only for all rent and damages accrued to the date of the termination of the lease, but also all rentals falling due

---

[9] We do note, however, that the trial court incorrectly determined that Appellant's partial performance of the Lease "provides an exception to [the Statute of Frauds]." Firstly, as noted above, the Statute of Frauds was inapplicable because there was a written contract, and Appellant was made a party to that contract by the nature of the joint venture. Secondly, even had the Statute of Frauds applied, this Court has held that "partial performance will not create an exception to the Statute of Frauds if the subject matter of the alleged agreement involves interests in real estate." *Smith v. Hi-Speed, Inc.*, 536 S.W.3d 458, 477 (Tenn. Ct. App. 2016).

thereafter, subject, however, to the requirement that Lessor shall make reasonable efforts to re-let the premises and to diminish the damages of the Lessor. The damages of the Lessor *shall include attorney's fees* and costs of collection[.]

(emphasis added). "Litigants must pay their own attorney's fees absent a statute or agreement providing otherwise." *J& B Investments, LLC v. Surti*, 258 S.W.3d 127, 138 (Tenn. Ct. App. 2007) (citing *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186 194 (Tenn. 2000)). A provision in a contract awarding attorney's fees will be enforced by the courts, limited to the situation agreed to the parties in the contract. *Ingram v. Sohr*, No. M2012-00782-COA-R3-CV, 2013 WL 3968155, at \*27 (Tenn. Ct. App. July 31, 2013). Here, the Lease explicitly provides for the recovery of attorney's fees in the event of default by Appellant. Accordingly, we remand the case to the trial court to determine the proper amount of attorney's fees on appeal to be awarded to Plaintiffs.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
ARNOLD B. GOLDIN, JUDGE

- 7 -