# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### July 12, 2016 Session

## CHRISTY GAIL BOWMAN v. MOUNIR BENOUTTAS ET AL.

**Appeal from the Circuit Court for Coffee County**
**No. 40417      Walter C. Kurtz, Judge**

_____

**No. M2015-01723-COA-R3-CV – Filed September 9, 2016**

_____

At issue in this case is whether a defendant, which claims to be merely the broker of a shipment that was being delivered, may be held vicariously liable for the negligence of the delivery driver. This action arises out of a motor vehicle accident involving a tractor-trailer that was owned and operated by Mounir Benouttas. At the time of the accident, Mr. Benouttas was delivering a shipment pursuant to a contractual arrangement with MGR Freight Systems, Inc. In addition to suing Mr. Benouttas and MGR, Plaintiff sued AllStates Trucking, Inc., which had contracted with MGR to deliver the shipment to AllStates' customer. Plaintiff claimed AllStates was vicariously liable under the doctrines of respondeat superior and joint venture. Plaintiff later amended her complaint to include the additional theory of implied partnership. The trial court summarily dismissed all claims against AllStates because Plaintiff could not establish an agency relationship, joint venture, or implied partnership. Plaintiff appeals contending summary judgment was inappropriate because material facts are at issue. Plaintiff also challenges the trial court's decision to consider only the legal theories Plaintiff explicitly stated in her complaint, the court's partial denial of Plaintiff's motion to amend her complaint, denial of her motion for summary judgment, and its decision to allow AllStates to rely on untimely filings. Finding no error with the trial court's decisions, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Ronald J. Berke, Jeremy M. Cothern, & Charles A. Flynn, Chattanooga, Tennessee, for the appellant, Christy Gail Bowman.

Terrill L. Adkins & Hannah S. Lowe, Knoxville, Tennessee, for the appellee, AllStates Trucking, Inc.

# OPINION

On July 16, 2012, Christy Gail Bowman ("Plaintiff") was injured in a multivehicle accident on Interstate 24 in Coffee County, Tennessee, when her car collided with a tractor-trailer that was owned and being operated by Mounir Benouttas. At the time of the accident, Mr. Benouttas was hauling freight pursuant to a contract with MGR Freight Systems, Inc. ("MGR").[1]

The shipment being delivered by Mr. Benouttas had been "brokered" to MGR by AllStates Trucking, Inc. ("AllStates"). AllStates is a freight company that ships goods on behalf of its customers using its own fleet. AllStates is also a licensed broker of general commodities, and when demand for AllStates' shipping services exceeds its fleet capacity, AllStates "brokers" the shipments by contracting with carriers such as MGR to complete the deliveries pursuant to a "broker-carrier" agreement.

On June 6, 2013, Plaintiff commenced this action in which she named Mr. Benouttas, MGR, and AllStates as defendants, among others.[2] Plaintiff alleged that Mr. Benouttas was negligent in the operation of his truck and caused the accident that injured Plaintiff. Plaintiff also alleged that Mr. Benouttas was acting as an agent of MGR and AllStates at the time of the accident and that MGR and AllStates were vicariously liable under the principles of agency or joint venture.[3]

After discovery, AllStates filed a motion for summary judgment arguing that it could not be held vicariously liable because there was not an agency relationship between AllStates and Mr. Benouttas or MGR, and the parties were not engaged in a joint venture. In support of this motion, AllStates presented a statement of undisputed facts in which it identified its contractual relationship with MGR and the lack of any contractual relationship with Mr. Benouttas. Specifically, AllStates identified the "independent brokerage contract" it had with MGR, pursuant to which MGR agreed to provide transportation services. Under the terms of this contract "MGR agreed to employ all persons necessary to perform its services under the contract and agreed to accept the

---

[1] MGR Freight Systems, Inc., previously used the name MGR Express, Inc., and there was some initial confusion between the parties as to whether MGR Freight and MGR Express were the same entity. The parties now agree, however, that for purposes of this action, MGR Freight Systems and MGR Express can be considered one and the same.

[2] The issues on appeal are limited to Plaintiff's claims against AllStates. The claims against Mr. Benouttas and MGR remain in the trial court while the claims against the other defendants were dismissed. Plaintiff was entitled to appeal the dismissal of her claims against AllStates because the order dismissing AllStates was designated as a final, appealable judgment pursuant to Tenn. R. Civ. P. 54.02.

[3] On June 12, 2013, Plaintiff filed an amended complaint that asserted the same general allegations and claims for relief.

responsibilities of an independent contractor and explicitly stated that nothing in the contract created an employee-employer relationship between the broker and the carrier[.]" Further, "[t]he agreement . . . provided that neither party was authorized to act for or in any manner represent itself as an agent of the other or to conduct or enter into any agreement for or on behalf of the other party[.]"

AllStates' statement also identified facts to establish that on January 1, 2012, MGR contracted with Mr. Benouttas to transport the shipment in question. According to AllStates' statement of undisputed facts, "Mr. Benouttas was not an employee of AllStates," "did not receive any payment or compensation from AllStates related to the load he was hauling," "[had] never entered into a contract with AllStates," and "[had] never even heard of AllStates before the accident giving rise to this litigation[.]" Additionally, AllStates stated that it had no communication with Mr. Benouttas, gave him no instructions regarding the load he was hauling, provided no equipment, and "did not exercise any control whatsoever over the handling of the cargo, loading or unloading, or transportation of the cargo carried out by [Mr. Benouttas.]"[4]

Plaintiff filed a response to AllStates' motion for summary judgment in which she argued that AllStates should be held vicariously liable under the legal theories of agency and joint venture. Additionally, Plaintiff asserted that AllStates could be held vicariously liable under the theories of implied partnership, loaned servant, and vicarious liability for an independent contractor. Further, Plaintiff argued that AllStates should be liable for its own negligence under a theory of negligent hiring and "other theories that may be identified through additional discovery."

Additionally, in her response to AllStates' statement of undisputed material facts, Plaintiff admitted that MGR was responsible for employing the persons necessary to satisfy its duties under the brokerage contract with AllStates but denied that the brokerage contract created an independent contractor relationship between AllStates and MGR. Plaintiff also admitted that the brokerage agreement provided that neither party was authorized to act or represent itself as the agent of the other but denied that such statement was representative the actual relationship of the parties. Further, Plaintiff denied AllStates' claim that Mr. Benouttas was not its employee and that he did not receive any payment from AllStates but admitted that Mr. Benouttas had never entered into a contract with AllStates, had never heard of AllStates before the accident, received no communication or instruction from AllStates regarding the load he was hauling, and received no equipment from AllStates for use in his hauling activities. Plaintiff also denied AllStates' assertion that it did not exercise any control over the handling or transportation of the cargo by Mr. Benouttas.

---

[4] This statement of facts was accompanied by several exhibits, including the brokerage contract, the operating agreement between MGR and Mr. Benouttas, and Mr. Benouttas' deposition.

Plaintiff also submitted a statement of additional material facts that identified facts regarding AllStates' business practices. Specifically, Plaintiff stated that "AllStates brokers over half of the loads that they receive [and] . . . uses a 'core group' of outside shipping companies that [it] will broker shipments to, which includes [MGR.]" When brokering shipments to third parties, AllStates frequently contacts multiple companies who could potentially deliver the brokered load. After inquiring about each company's availability, AllStates makes a determination as to who to select following a price negotiation.

Plaintiff also identified facts to establish that once AllStates contracts with a client for a specific shipment, Allstates' local delivery driver picks up the freight from the customer and brings the freight to AllStates' facility, where the loads are assembled. AllStates then provides the brokered company, such as MGR, with the bill of lading provided by the customer, which informs the delivery driver of when the freight needs to be delivered. Plaintiff's statement of additional facts goes on to provide that "[o]nce the shipment is brokered to another company, AllStates does not participate in . . . selecting the time of pick-up or the route that the driver will take[.]" Further, "AllStates does not have any role in selecting the delivery route, and did not control the manner in which the delivery occurred[.]" Once the brokered shipment is completed, AllStates is paid by its customer. Thereafter, AllStates pays MGR the agreed upon fee for its services, and AllStates retains the rest. Mr. Benouttas is compensated for his services by MGR, not AllStates.

On March 2, 2015, an agreed order was entered setting the motion for summary judgment for hearing on May 4, 2015; however, Plaintiff subsequently filed a motion for continuance asking for additional time for further discovery. The trial court granted Plaintiff's motion and set the summary judgment hearing for July 7, 2015. The court directed the parties to complete discovery by June 10, 2015, and instructed Plaintiff to file any additional response to the motion for summary judgment by June 26, 2015. Any reply by AllStates was to be filed by July 2, 2015.

On June 26, 2015, Plaintiff filed a supplemental response in opposition to AllStates' motion for summary judgment, arguing once again that AllStates should be held vicariously liable under the theories of agency, joint venture, implied partnership, loaned servant, vicarious liability for an independent contractor, and negligent hiring. Plaintiff argued that these theories of recovery involved questions of fact for the jury to resolve; therefore, summary judgment was improper.

Accompanying this additional response, Plaintiff filed a supplemental statement of material facts in which Plaintiff specifically incorporated the assertions set forth in her previous statement of facts. Plaintiff also stated that MGR had been cited multiple times for inadequate safety measures by the United States Department of Transportation and

that the records of these citations were available to the public at large, including brokers like Allstate, when making hiring decisions. Further, Plaintiff stated that "[MGR] and AllStates entered into a perpetual contract for freight services with each delivery to be negotiated separately at some point in the 2000s," and between the years 2010 and 2015, approximately 350 deliveries were made by MGR under this contract.

Plaintiff's supplemental statement of facts also claimed that AllStates loaded MGR's trucks in a way that dictated the order of delivery. Further, according to Plaintiff, when dealing with MGR, "AllStates would dictate the pickup location, the order of deliveries, the timeframe for the deliveries, and had the right and ability to control the drivers and equipment, including sending specific instructions for deliveries in bills of lading or by facsimile to [MGR] and selecting the equipment used."

AllStates filed a reply on July 6, 2015, arguing that Plaintiff had failed to identify evidence sufficient to establish an agency relationship or a joint venture. Additionally, AllStates argued that Plaintiff should be barred from asserting liability under the theories of implied partnership, vicarious liability for an independent contractor, loaned servant, and negligent hiring because she failed to assert these theories in her complaint. AllStates also filed a response to Plaintiff's statements of facts, in which it admitted that MGR had been cited for inadequate safety measures but denied that AllStates exercised control over MGR's drivers or equipment and that an employment or joint venture relationship existed between Mr. Benouttas and AllStates.

Plaintiff filed an objection to AllStates' reply, claiming that the filing was untimely because it was filed after the July 2, 2015 deadline; therefore, the court should not consider it in ruling on the motion for summary judgment. Plaintiff additionally filed a motion for summary judgment arguing that because AllStates failed to timely file its responsive papers, it failed to respond to the factual and legal assertions made in Plaintiff's supplemental response, and thus, the issue of AllStates' vicarious liability was unopposed.[5]

On July 7, 2015, the parties appeared before the court for a hearing on AllStates' motion for summary judgment. That same day, Plaintiff filed a motion for leave to amend her complaint, seeking to specifically assert claims for implied partnership, loaned servant, vicarious liability for an independent contractor, and negligent hiring. After the hearing, the trial court entered an order in which it stated:

---

[5] Plaintiff titled this motion a "Rule 56 Motion for Judgment as a Matter of Law for the Non-Moving Party." However, the trial court properly recognized that this motion was more accurately a motion for summary judgment. *See* Tenn. R. Civ. P. 56.01 ("A party seeking to recover upon a claim . . . may, at any time after . . . service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.").

The Court will allow the amendment for implied partnership because it is really a species of joint venture. The Court has addressed this theory in its decision on the summary judgment motion.

The motion [to amend] is denied as to the remaining theories and/or causes of action. This motion comes after the discovery deadline, after other parties have settled and/or been dismissed, and twenty-five (25) months after the case was filed. The Court finds the expansion of this lawsuit to add these dubious issues to come too late. It appears to the Court that plaintiff's counsel, perhaps having some doubts about agency and/or joint venture, has now at the last minute decided to throw in every possible theory he could think up with the hope that one might stick. He filed his motion on the very morning of the argument on the summary judgment motion. To allow this amendment would necessitate reopening discovery and would be prejudicial to the defendants and to the orderly and expedient system of justice.

Additionally, the court denied Plaintiff's motion for summary judgment and declined to strike AllStates' reply as untimely; however, because of the technical violation of the scheduling order, the trial court ordered AllStates to pay Plaintiff's attorney's fees in the amount of $100.00 as a sanction.

Further, the trial court granted AllStates' motion for summary judgment. The court reasoned that whether one is an agent or an independent contractor depends upon who has the right to control the methods and manner in which the work is done. It also observed that a joint venture in Tennessee law requires proof of a common purpose, some agreement between the two entities, and the equal right on the part of each to control the venture as a whole and any relevant instrumentality. The trial court found that the element of control necessary to support a finding of an agency relationship between AllStates and Mr. Benouttas was not present in this case. Further, the court reasoned that this lack of control also meant that the assertion of joint venture and implied partnership was without basis. The court also noted that Plaintiff's statement of facts acknowledged the status of AllStates as a broker in the transaction, and the principles of joint venture and implied partnership are incompatible with the generally accepted definition of "broker." Accordingly, the court determined that AllStates' motion for summary judgment should be granted.

Thereafter, Plaintiff filed a motion under Tenn. R. Civ. P. 54.02 to have the trial court's order be entered as a final judgment, which was granted by the trial court. Additionally, AllStates filed a motion for discretionary costs, in which it requested $1,621.37 for court reporter fees, deposition fees, and other expenses incurred in litigation. The court granted this motion and awarded costs in the amount of $1,500.00.

Plaintiff initiated this appeal and raises several issues. Generally stated, Plaintiff argues that the trial court erred in granting AllStates' motion for summary judgment because material questions of fact exist regarding the issues of agency, joint venture, and implied partnership. Additionally, Plaintiff argues that the trial court erred by partially denying her motion to amend and by considering only the legal theories explicitly stated in Plaintiff's original complaint, as well as implied partnership, in ruling on AllStates' motion for summary judgment. Further, Plaintiff contends that the trial court erred by permitting AllStates to rely on its untimely reply filings and by declining to grant Plaintiff's motion for summary judgment.

AllStates raises one issue on appeal: whether the trial court abused its discretion in failing to award the entirety of the discretionary costs set forth in its motion for discretionary costs.

## STANDARD OF REVIEW

We review a trial court's summary judgment ruling de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). In doing so, we make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id.* (citing *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013)).

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04; *see also Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008). The party moving for summary judgment bears the burden of demonstrating both that no genuine dispute of material fact exists and that it is entitled to a judgment as a matter of law. *Martin*, 271 S.W.3d at 83. When the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either: (1) by affirmatively negating an essential element of the nonmoving party's claim; or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense. *Rye*, 477 S.W.3d at 264.

With respect to the trial court's decisions regarding Plaintiff's motion to amend, whether to consider AllStates' reply filing, and AllStates' motion for discretionary costs, we review the trial court's decisions under an abuse of discretion standard. *See Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 42 (Tenn. Ct. App. 2006); *Owens v. Owens*, 241 S.W.3d 478, 497 (Tenn. Ct. App. 2007). In order to ascertain whether a trial court's decision constitutes an abuse of discretion, we review the decision to determine whether the factual basis is properly supported by the evidence in the record, whether the trial court properly identified and applied the most appropriate legal principles applicable to

the decision, and whether the court's decision was within the range of acceptable alternate dispositions. *Gooding v. Gooding*, 477 S.W.3d 774, 781 (Tenn. Ct. App. 2015) (citing *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524-25 (Tenn. 2010)).

## ANALYSIS

### I. ALLSTATES' MOTION FOR SUMMARY JUDGMENT

Individuals are ordinarily liable only for their own conduct; however under certain circumstances, a person may be held vicariously liable for the tortious acts of other persons, notwithstanding his freedom from individual fault. *See* Lawrence A. Pivnick, 1 Tenn. Cir. Ct. Prac. § 5:16 (2016). In ruling on AllStates' motion for summary judgment, the trial court considered the application of vicarious liability under three theories—respondeat superior, joint venture, and implied partnership—and ultimately granted summary judgment in favor of AllStates on these issues. On appeal, Plaintiff argues that the trial court erroneously granted summary judgment because there is a genuine question of material fact as to whether AllStates can be held vicariously liable under these theories.

### A. The Doctrine of Respondeat Superior

Under the doctrine of respondeat superior, a principal can be held vicariously liable for the tortious conduct of its agent if the agent was acting on the principal's business and within the scope of his or her employment when the injury occurred. *Tucker v. Sierra Builders,* 180 S.W.3d 109, 120 (Tenn. Ct. App. 2005) (citing *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338, 346 (Tenn. 2002)). However, a principal is generally not liable for the actions of its independent contractors. *See Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 295 (Tenn. 2011). Thus, the first question to consider in assessing Allstates' liability is whether an agency relationship existed between the parties in this case. *See Tucker*, 180 S.W.3d at 120.

The creation of a principal-agent relationship does not require an explicit agreement, contract, or understanding between the parties. *Johnson*, 74 S.W.3d at 343. Instead, determining whether such a relationship exists requires a careful analysis of the facts in a given case. *Tucker*, 180 S.W.3d at 120. The following factors should be considered when determining whether a person is an agent or an independent contractor:

> (1) the right to control the conduct of the work, (2) the right of termination, (3) the method of payment, (4) the freedom to select and hire helpers, (5) the furnishing of tools and equipment, (6) the self-scheduling of work hours, and (7) the freedom to render services to other entities.

*Id.* (citing *Beare Co. v. State*, 814 S.W.2d 715, 718 (Tenn. 1991)); *see also McInturff v. Battle Ground Acad. of Franklin*, No. M2009-00504-COA-R3-CV, 2009 WL 4878614, at *2 (Tenn. Ct. App. Dec. 16, 2009).

The most indicative factor in determining whether a principal-agent relationship exists is the right of the principal to control the conduct of the work of the agent. *Tucker*, 180 S.W.3d at 120. The extent of control over the manner in which work is performed is one of the most significant differences between an agent and an independent contractor. *McInturff*, 2009 WL 4878614, at *3; *see also Powell v. Va. Constr. Co.*, 13 S.W. 691, 692 (Tenn. 1890) ("[a]n independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and *without being subject to control* of his employer, except as to the result of his work."(emphasis added)).

"Although the principal's right to control the actions of the agent is an important factor in finding the existence of an agency relationship . . . the right of control is not necessarily as important as the principal's exercise of actual control over the agent[.]" *White v. Revco Disc. Drug Cntrs. Inc.*, 33 S.W.3d 713, 723 (Tenn. 2000) (internal citations omitted); *see also Sodexho Mgmt., Inc. v. Johnson*, 174 S.W.3d 174, 181 (Tenn. Ct. App. 2004) ("[T]he mere existence of the right to control certain aspects of another's operations is not determinative of the agency issue. . . . [O]ur determination should be based on the extent of control exercised over the agent/contractor, including whether the principal retained and exercised control over the means of accomplishing the result as distinguished from controlling the result but not the means.").

Plaintiff contends that AllStates maintained control over Mr. Benouttas and MGR by reserving the right to provide MGR's drivers with specific instructions via bills of lading or facsimile, select the equipment to be used in the delivery, monitor the progress of deliveries, and contact MGR's drivers directly via cellphone. Additionally, Plaintiff argues that AllStates exercised control by assembling shipments at its facility and loading delivery trucks in a manner that determined the order of delivery.

In this case, although AllStates reserved the right to communicate with MGR's drivers, there is no evidence that AllStates ever communicated with Mr. Benouttas. To the contrary, it is undisputed that Mr. Benouttas had never heard of AllStates prior to the accident in question. Additionally, although Mr. Benouttas received the bill of lading from AllStates, this document simply listed when and where the shipment was to be delivered and did not contain any specific instructions for Mr. Benouttas regarding the shipment. Moreover, it is undisputed that AllStates did not provide any equipment to Mr. Benouttas. Instead, Mr. Benouttas owned the truck that was involved in the accident. The undisputed facts also establish that AllStates did not actively monitor the progress of Mr. Benouttas' shipment and was unaware of the accident in question until much later.

Further, although AllStates assembled the commodities at its facility and loaded Mr. Benouttas' truck, this fact does not negate the remaining undisputed facts, which show that Mr. Benouttas and MGR operated independently of AllStates. Specifically, it is undisputed that AllStates did not select the time of pick-up or the route to be taken. Additionally, AllStates did not provide Mr. Benouttas or any MGR's drivers with funds to cover their expenses. Moreover, Mr. Benouttas received payment from MGR, not AllStates, and there is no evidence that AllStates had the right to terminate Mr. Benouttas or any of MGR's drivers, schedule their work hours, or prevent them from rendering services to other entities.

Additionally, the brokerage contract between AllStates and MGR undercuts Plaintiff's argument that an agency relationship existed. As mentioned above, this contract granted MGR the authority to employ all persons necessary to perform its contractual obligations. Pursuant to this contract, MGR agreed to "accept the responsibility of an independent contractor," and it specified that "nothing herein shall be construed as an employer-employee relationship between [MGR] and [AllStates]." Further, the contract stated that "the relationship of [MGR] to [AllStates] shall, at all times, be that of an independent contractor."

Based on these facts, it is clear that although AllStates maintained some degree of control over the result and objective of the parties' relationship—i.e., delivering shipments to a particular location at a particular time—AllStates did not control the means and manner by which Mr. Benouttas and MGR accomplished this objective. Such an arrangement is not indicative of an agency relationship between the parties. To the contrary, it shows that Mr. Benouttas and MGR were independent contractors of AllStates. *See Sodexho Mgmt. Inc.*, 174 S.W.3d at 181 ("Where [an entity] represents the will of the principal as to the result of the work but not as to the means or manner of accomplishing the work, it is an independent contractor."). Further, as described above, additional factors—such as MGR's right to select the delivery drivers, the fact that Mr. Benouttas supplied the necessary equipment and scheduled his own work hours, and the fact that AllStates did not have the right to terminate MGR's drivers or prevent them from working for other entities—also support the conclusion that Mr. Benouttas and MGR were independent contractors. *See Tucker*, 180 S.W.3d at 120 (listing the factors for considering whether an agency relationship exists). Accordingly, we affirm the trial court's determination that AllStates cannot be held vicariously liable under the respondeat superior doctrine.

## B. Joint Venture

Additionally, the trial court concluded that AllStates could not be held vicariously liable under a joint venture theory based on the facts of this case. Plaintiff contends this was error.

The Tennessee Supreme Court has described a joint venture as follows:

> A joint venture is an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge, but without creating a partnership in the legal or technical sense of the term, or a corporation, and they agree that there shall be a community of interest among them as to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as agent, as to each of the other coadventurers, with an equal right of control of the means employed to carry out the common purpose of the adventure.

*Fain v. O'Connell*, 909 S.W.2d 790, 793 (Tenn. 1995) (quoting 30 Am.Jur., p. 939). Thus, the elements necessary to establish a joint venture are: (1) a common purpose; (2) some manner of agreement among the parties; and (3) an equal right on the part of each party to control both the venture as a whole and any relevant instrumentality. *Id.* (citing *Cecil v. Hardin*, 575 S.W.2d 268, 271-72 (Tenn. 1978)).

Because each member of a joint venture is considered the agent of the others, the negligence of one member can be imputed to the rest. *See Fain*, 909 S.W.2d at 792 (quoting W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts*, § 72, at p. 516-17 (5th ed. 1984)) ("The law then considers that each [coadventurer] is the agent or servant of the others, and that the act of any one within the scope of the enterprise is to be charged vicariously against the rest.").

It is undisputed that Mr. Benouttas had never entered an agreement or contract with AllStates. In fact, Mr. Benouttas had never heard of AllStates prior to the accident. Thus, Plaintiff failed to establish a joint venture between Mr. Benouttas and AllStates. However, Plaintiff contends there was a joint venture between AllStates and MGR because they entered a perpetual brokerage contract for the shipment of goods.

As discussed above, in order to establish a joint venture, both parties must have an equal right to control the venture and any relevant instrumentalities. Here, although AllStates assembled the loads at its facility and retained the contractual right to "inspect all equipment used" and "reject any such equipment that it deem[ed] inadequate," MGR and its drivers controlled their operations. Specifically, MGR was responsible for hiring the drivers needed to complete the deliveries and was required to maintain liability insurance for the cargo. Additionally, MGR or its drivers supplied the trucks and equipment to be used in the shipment and were responsible for selecting the route and manner of delivery. Therefore, the requirement of "equal control" is not present.

Accordingly, the trial court correctly determined that AllStates cannot be held vicariously liable under a joint venture theory.

## C. Implied Partnership

The trial court concluded that AllStates did not have an implied partnership with MGR or Mr. Benouttas. Plaintiff contends this was error.

In Tennessee, a partnership is the association of two or more persons to carry on as co-owners of a business for profit. Tenn. Code Ann. § 61-1-202(a). In order to form a partnership, the intent of the parties need not be expressed orally or in writing. *Bass v. Bass,* 814 S.W.2d 38, 41 (Tenn. 1991). Instead, "[t]he existence of a partnership can be implied from the circumstances where it appears that the individuals involved have entered into a business relationship for profit, combining their property, labor, skill, experience, or money." *Id.* Further, any entity that receives a share of the profits of a business is presumed to be a partner of the business, unless the profits were received as payment for, *inter alia*, "services as an independent contractor or of wages or other compensation to an employee." Tenn. Code Ann. § 61-1-202(c)(3). However, "[w]hen a partnership agreement is not written, the proponent of the partnership must prove the existence of the partnership by clear and convincing evidence." *Kuderewski v. Estate of Hobbs*, No. E2000-02515-COA-R3-CV, 2001 WL 862618, at *3 (Tenn. Ct. App. July 30, 2011); *see also Tanner v. Whiteco, L.P.*, 337 S.W.3d 792, 798 (Tenn. Ct. App. 2010) ("[C]lear and convincing evidence is required to establish an implied partnership.").

In this case, the trial court concluded that the undisputed facts did not show the existence of an implied partnership between the parties. Specifically, the court concluded that "[t]here is no combination of property, labor, skill and money all of which is necessary to find the [existence of a] partnership." After reviewing the record, we agree with this conclusion. As discussed above, the labor, skill, and equipment needed to fulfill the brokerage contracts were controlled by MGR and its drivers, not by AllStates. Additionally, although AllStates and MGR have a long-term contractual relationship, MGR is only one of several companies that AllStates contacts to broker shipments. Further, there is no evidence in this case that the parties shared business profits or combined money. Instead, the only funds exchanged between AllStates and MGR were the pre-negotiated payment MGR received for its delivery services. Moreover, it was MGR that paid Mr. Benouttas, not AllStates.

Therefore, the trial court correctly determined that AllStates cannot be held vicariously liable under an implied partnership theory.

## II. PLAINTIFF'S ADDITIONAL ISSUES

Plaintiff contends the trial court erred by refusing to consider the legal theories of loaned servant, vicarious liability for an independent contractor, and negligent hiring. Plaintiff also argues that the trial court erred by denying her motion to amend the complaint with respect to these additional theories.[6] Further, Plaintiff contends that the trial court erred by declining to strike AllStates' untimely filings and by denying Plaintiff's motion for summary judgment.

### A. Tennessee Rule of Civil Procedure 8.01

Rule 8.01 of the Tennessee Rules of Civil Procedure requires that pleadings contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Tenn. R. Civ. P. 8.01. Although a complaint, "need not contain detailed allegations of all the facts giving rise to the claim," it "must contain sufficient factual allegations to articulate a claim for relief." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 427 (Tenn. 2011).

In this case, the complaint alleges that AllStates should be held vicariously liable under the theories of agency or joint venture. Specifically, the complaint states:

11. [A]t all times relative to the Complaint herein, Defendant Mr. Benouttas was performing his duties as an agent of Defendant AllStates and was acting within the scope and course of his agency with Defendant AllStates.

12. Alternatively, Plaintiff alleges that Defendant Mr. Benouttas was operating his vehicle with a joint purpose and/or joint venture with Defendant AllStates.

. . . .

38. At all times relative to the Complaint herein, one of, some combination of, or all of Defendants . . . [MGR] and AllStates were the employers of Defendant Mr. Benouttas and he was within the scope and course of his employment at the time of the collision that is subject of this lawsuit.

---

[6] As noted above, the trial court granted Plaintiff's motion to amend the complaint with respect to the implied partnership theory and considered such theory in ruling on the motion for summary judgment.

39.	Alternatively, Defendant Mr. Benouttas was acting as an agent and/or as part of a joint venture with one of, some combination of, or all of the Defendants . . . [MGR] and AllStates.

40.	Accordingly, Defendants . . . [MGR] and/or AllStates are liable for the acts and omissions of Defendant Mr. Benouttas under the theories of vicarious liability, *respondeat superior*, agency principles, and/or joint venture principles.

Notably, the complaint fails to mention the legal theories of loaned servant, vicarious liability of an independent contractor, or negligent hiring. Despite the liberal pleading standard set forth in Tenn. R. Civ. P. 8.01, "[t]here is no duty on the part of the court to create a claim that the pleader does not spell out in his complaint." *Moses v. Dirghangi*, 430 S.W.3d 371, 376 (Tenn. Ct. App. 2013) (quoting *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 704 (Tenn. 2002)). In fact, "[w]hen the Court is dealing simply with allegations of pleadings, . . . the Court is not free to construct additional facts or allegations." *Chism v. Mid-South Milling Co., Inc.*, 762 S.W.2d 552, 555 (Tenn. 1998), *superseded by statute on other grounds*. Accordingly, because Plaintiff failed to include allegations of loaned servant, negligent hiring, and vicarious liability of an independent contractor in her complaint, we conclude that the trial court did not err by declining to consider these additional legal theories. *See Vise v. Swift*, No.1, 1989 WL 89752, at *3 (Tenn. Ct. App. Aug. 8, 1989) (concluding that when respondeat superior was the sole theory of liability alleged in the complaint, Plaintiff could not thereafter rely on a theory of negligent entrustment).

For the foregoing reasons, we find no error with the trial court's determination that the complaint did not assert claims based on the legal theories of loaned servant, vicarious liability of an independent contractor, or negligent hiring.

## B.  Tennessee Rule of Civil Procedure 15.01

Alternatively, Plaintiff contends the trial court erred by denying her Rule 15.01 motion to amend the complaint to include these additional theories.

After a responsive pleading has been served, "a party may amend the party's pleadings only by written consent of the adverse party or by leave of the court[.]" Tenn. R. Civ. P. 15.01. Although leave to amend "shall be freely given when justice so requires," *see id.*, the decision of whether to grant a motion to amend is within the trial court's discretion, and this court will reverse the trial court's decision only for an abuse of discretion. *Kincaid*, 221 S.W.3d at 42. As mentioned above, in order to ascertain whether the trial court has abused its discretion, we review the court's decision to determine whether the factual basis for the decision is properly supported by the evidence in the record, whether the trial court properly identified and applied the most appropriate

legal principles applicable to the decision, and whether the court's decision was within the range of acceptable alternate dispositions. *Gooding*, 477 S.W.3d at 781.

"There are several considerations a trial court should evaluate when determining whether to grant or deny a motion to amend a complaint." *Kincaid*, 221 S.W.3d at 42. These factors include: (1) undue delay in filing; (2) lack of notice to the opposing party; (3) bad faith by the moving party; (4) repeated failure to cure deficiencies by previous amendments; (5) undue prejudice to the opposing party; and (6) futility of amendment. *Id.* "When a motion to amend is denied, the trial court should 'give a reasoned explanation for its action.'" *Id.* (quoting *Henderson v. Bush Bros. & Co.*, 868 S.W.2d 236, 238 (Tenn. 1993)).

In this case, the trial court addressed Plaintiff's motion to amend in its order, stating:

> The Court will allow the amendment for implied partnership because it is really a species of joint venture. The Court has addressed this theory in its decision on the summary judgment motion.
>
> The motion [to amend] is denied as to the remaining theories and/or causes of action. This motion comes after the discovery deadline, after other parties have settled and/or been dismissed, and twenty-five (25) months after the case was filed. The Court finds the expansion of this lawsuit to add these dubious issues to come too late. It appears to the Court that plaintiff's counsel, perhaps having some doubts about agency and/or joint venture, has now at the last minute decided to throw in every possible theory he could think up with the hope that one might stick. He filed his motion on the very morning of the argument on the summary judgment motion. To allow this amendment would necessitate reopening discovery and would be prejudicial to the defendants and to the orderly and expedient system of justice.

It is evident that the trial court considered the applicable legal principles and facts when considering Plaintiff's motion to amend and that it was particularly persuaded by Plaintiff's delay in filing its motion to amend and the prejudice to AllStates and the other defendants. The record also reveals that the trial court's decision was properly supported by the evidence in the record and that its decision to deny the motion was within the range of acceptable alternate dispositions. *See Gooding*, 477 S.W.3d at 781. Therefore, we affirm the trial court's discretionary decision to deny Plaintiff's motion to amend her complaint.

- 15 -

## C. Plaintiff's Rule 56 Motion and AllStates' Untimely Reply

As discussed above, after AllStates filed its motion for summary judgment, the trial court continued the hearing on the motion to grant Plaintiff additional time to conduct further discovery. The order that followed required the parties to complete discovery by June 10, 2015. Additionally, Plaintiff was ordered to file its response to AllStates' motion for summary judgment by June 26, 2015, and AllStates was ordered to file its reply to Plaintiff's response no later than July 2, 2015.

Plaintiff filed her response to AllState's motion for summary judgment, including a statement of facts, on June 26, 2015. AllStates filed its reply; however, the reply was not filed with the clerk until July 6, 2015, which was one day after the deadline.[7]

Plaintiff objected to the late-filed reply, arguing that it should be stricken as untimely. Plaintiff also filed her own motion for summary judgment, arguing that because AllStates failed to timely reply to her additional response and statement of facts, her allegations, which were undisputed, showed that she was entitled to judgment as a matter of law.

The trial court declined to strike AllStates' untimely reply, granted AllStates' motion for summary judgment, and denied Plaintiff's motion for summary judgment. Plaintiff contends each of these rulings was error. We respectfully disagree.

A trial court has the discretion to enter a scheduling order that, *inter alia*, limits the time to complete and respond to discovery. *See Waters v. Coker*, No. M2007-01867-COA-RM-CV, 2008 WL 4072104, at \*7 (Tenn. Ct. App. Aug. 28, 2008); Tenn. R. Civ. P. 16.01. In situations where a party fails to comply with a trial court's scheduling order, Tenn. R. Civ. P. 16.06 provides:

> If a party or party's attorney fails to obey a scheduling or pretrial order . . . the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just . . . . In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

---

[7] As mentioned previously, the reply was due Thursday, July 2, 2015, and was filed Monday, July 6, 2015 (the next business day given that July 3, 2015—the Friday before Independence Day—was a state holiday).

Tenn. R. Civ. P. 16.06. However, "[i]t is within the trial judge's discretion to decide what orders, if any, to issue as a consequence of a party's failure to obey a scheduling order." *Waters*, 2008 WL 4072104, at *7. We review the trial court's decision under an abuse of discretion standard. *Id.*

At the summary judgment hearing, the trial court discussed AllStates' late filing and noted that, although the reply was not filed with the clerk until July 6, the judge received AllStates' reply via email on July 2, and the reply was sent via fax to Plaintiff's counsel on the same day. Based upon these facts, the court refused to strike AllStates' reply but determined that some sanction should be imposed for the late filing. Thus, the court ordered AllStates to pay Plaintiff's attorney's fees in the amount of $100.00 as a sanction.

We believe that the trial court's decision was within its discretion. Although AllStates' reply was not "filed" until July 6, all parties had a copy of AllStates' reply within the time period contemplated by the trial court's scheduling order and had notice of the reply's contents. Thus, AllStates' untimely reply did not operate to prejudice the parties. Accordingly, although the trial court could have issued a harsher sanction for this technical violation, we believe that its decision to permit AllStates' late reply and issue a monetary sanction was entirely reasonable.

Further, the trial court did not err by denying Plaintiff's motion for summary judgment because, as we explained earlier, Plaintiff cannot establish the existence of an agency relationship, joint venture, or implied partnership. Accordingly, we affirm the denial of Plaintiff's motion for summary judgment.

## III. DISCRETIONARY COSTS

On appeal AllStates argues that the trial court abused its discretion by failing to award the full amount of discretionary costs it requested.

Rule 54.04 of the Tennessee Rules of Civil Procedure "empowers the trial courts to award the prevailing party certain litigation expenses." *Owens*, 241 S.W.3d at 496; Tenn. R. Civ. P. 54.04(2). Courts generally award discretionary costs if they are reasonable and if the party requesting them filed a timely, properly supported motion satisfying the requirements of the Rules of Civil Procedure. *Owens*, 241 S.W.3d at 497. However, a party is not automatically entitled to an award of discretionary costs. *Id.* "Awards of discretionary costs are, naturally, within the sound discretion of the trial court, and such awards are reviewed for an abuse of that discretion." *Estate of Elrod v. Petty*, No. M2015-00568-COA-R3-CV, 2016 WL 3574963, at *7 (Tenn. Ct. App. June 23, 2016) (citing *Owens*, 241 S.W.3d at 497).

In this case, AllStates requested $1,621.37 in discretionary costs for court reporter fees, deposition fees, and other expenses incurred in the course of litigation. After considering this request, the trial court determined that AllStates was entitled to an award of $1,500.00 in discretionary costs. Upon review, we believe that the trial court was within its discretion in reaching this conclusion. Therefore, we affirm the trial court's award of discretionary costs.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Christy Gail Bowman.

_____
FRANK G. CLEMENT, JR., JUDGE